UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DUDLEY P. GILBERT,

                     Plaintiff,

     -vs-

NEW YORK STATE POLICE and WAYNE E.
BENNETT, INDIVIDUALLY AND AS PAST
SUPERINTENDENT OF THE NEW YORK
STATE POLICE,

                     Defendants.
_____

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Docket No: 07-CV-0743 (WMS)

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of Civil Procedure for the United States District Court for the Western District of New York, defendants submit this statement of undisputed material facts in support of their motion for summary judgment. The only facts material to this motion are not in dispute, and are as follows:

1. At all times with which this case is concerned, defendant Wayne E. Bennett was Superintendent of the defendant, Division of State Police, for the State of New York ("NYSP"). Bennett Dec. ¶ 1. As such he supervised the NYSP. Bennett Dec. ¶ 2.

2. During his tenure as Superintendent, Super. Bennett was aided in his duties by, among others, his First Deputy Superintendent, Preston L. Felton ("D.S.P. Felton"). Bennett Dec. ¶ 3.

3. At all times with which this case is concerned Plaintiff, Dudley P. Gilbert, was a Trooper with the NYSP. Complaint ¶ 2 (Doc. No. 1). The plaintiff was employed as a Trooper for eighteen years. Complaint ¶ 8.

4. Plaintiff is black. Complaint ¶¶ 7 and 45.

5.      During his time as Trooper, the plaintiff had been the subject of various disciplinary actions by the NYSP, some of which involved his alcohol consumption. Bennett Dec. ¶ 25; and Gilbert Dep. pgs. 34 – 66.

6.      Members of the NYSP have certain statutory and regulatory protections regarding their employment. Bennett Dec. ¶ 5; see also New York Executive Law § 215 (3) and New York Regulations 9 NYCRR § 479, *et. seq.*  When first employed by the NYSP, each member serves a probationary period which ends one year after completing the basic training program at the State Police Academy. *Id.*  After a member becomes a permanent appointee, he may not be removed from employment with the NYSP without a hearing. *Id.*

7.      When a complaint is made regarding the behavior of a member of the NYSP, the matter is referred to Internal Affairs. Bennett Dec. ¶ 6.  Once the matter is investigated, a decision is made by the Chief Inspector in charge of Internal Affairs as to whether reasonable cause exists to believe that the member has violated NYSP rules and regulations. Bennett Dec. ¶ 9.  If there is reasonable cause, the Chief Inspector determines whether discipline is to be determined at NYSP Head Quarters, or at the Troop level.

8.      Disciplinary matters at NYSP Headquarters are generally handled by the First Deputy Superintendent and NYSP Counsel, who prepare formal charges, based on the findings of the investigation of the complaint. Bennett Dec. ¶ 10.  These charges are signed by the Superintendent. *Id.*  Under Superintendent Bennett, decisions to terminate a member were retained by him. *Id.*

9.      The Troopers' union is often involved in trying to negotiate disciplinary action prior to the filing of formal charges. Bennett Dec. ¶ 11.

10.     When a member is formally charged, he is informed of the discipline that he will be subject to and given a choice of accepting the discipline or requesting a hearing. Bennett Dec. ¶ 12.

11.     On November 9, 2004, the plaintiff was involved in a motor vehicle accident that was investigated by the Buffalo Police Department ("BPD"). Bennett Dec. ¶ 15; as well as pages 69 to 72 of the deposition of Dudley Gilbert, attached to the declaration of George Michael Zimmermann as Exhibit "A"; and Bates Nos. 1174 of plaintiff's NYPS disciplinary record (Discipline File # 20040788) attached to the Zimmermann declaration as Exhibit "B".

12.     The investigation of both the BPD and the NYSP led to the conclusion that plaintiff had been driving in an intoxicated condition when the accident occurred. Bennett Dec. ¶ 15; Gilbert Dep. pg. 69; and Discipline File # 20040788 pg. 1156.

13.     As a result of this incident, the plaintiff was issued a letter of censure, suspended without pay for fifteen days and returned to probationary status for six months, from February 1, 2005 to August 1, 2005. Bennett Dec. ¶ 17; Gilbert Dep. pg. 79; and Discipline File # 20040788 pg. 1146.

14.     The plaintiff was offered an opportunity to challenge the charges and request a hearing, but he declined to do so, waived his right to a hearing and accepted the above disciplinary actions. Bennett Dec. ¶¶ 16 and 17; Gilbert Dep. pg. 79 – 83, and 95, and Exhibit 2 attached thereto; and Discipline File # 20040788 pg. 1147 - 1148.

15.     Super. Bennett does not believe that he participate in that disciplinary action. Bennett Dec. ¶ 18.

16.     By being returned to probationary status, the plaintiff lost the statutory and regulatory protections which he had gained when he became a permanent appointee of the NYSP. New

York Executive Law § 215 (3); <u>Bennett Dec.</u> ¶¶ 5 and 13; <u>Gilbert Dep.</u> pg. 83 – 84; and <u>Gilbert vs Bennett</u>, Index No. 5736-05 (Supreme Court, Albany County, January 6, 2006), attached to the Zimmermann declaration as Exhibit "E".

17.     On May 27, 2005, the plaintiff was involved in a motor vehicle accident with another vehicle outside of Johnny's Golden Gloves bar in the City of Buffalo. <u>Bennett Dec.</u> ¶¶ 19 and 24; <u>Gilbert Dep.</u> pg. 93 – 97; and Bates No. 1252 of plaintiff's NYPS disciplinary record (Discipline File #20050365) attached to the Zimmermann declaration as Exhibit "C"; see also <u>Complaint</u> ¶ 22.

18.     This accident was investigated by Officers Patricia Parete and Patty Jo Krolikowski of the BPD. <u>Bennett Dec.</u> ¶¶ 24 and 30; <u>Gilbert Dep.</u> pg. 104 – 105; and Discipline File #20050365 Bates No. 1252 – 1259.

19.     A Supporting Deposition sworn to by Officer Parete indicates that the plaintiff "could barely walk and was staggering about. While speaking to him, I did detect a very strong odor of alcoholic beverage coming from [plaintiff's] breath and he did slur his words as he spoke and his eyes were glassy. [Plaintiff] had vomited al (sic) the inside of his vehicle." Discipline File #20050365 Bates No. 1256.  It further indicated that the plaintiff had refused to perform any field sobriety tests. *Id.*

20.     A Supporting Deposition sworn to by Officer Krolikowski indicates that she "did detect a strong odor of alcoholic beverage coming from the [plaintiff's] breath, his speech to be slurred and eyes bloodshot, I did also observe the [plaintiff] to be unsteady on his feet." Discipline File #20050365 Bates No. 1257.

21.     The plaintiff concedes that he had been drinking beer prior to getting in his vehicle. <u>Gilbert Dep.</u> pg. 94 – 95.  The plaintiff also admits to the fact that he was stumbling and acting

incoherent the night of May 27, 2005, but attributes these symptoms to his recently diagnosed diabetes. Gilbert Dep. pg. 99 – 100, 106, and 118. He further confirms that he vomited inside his car. Gilbert Dep. pg. 106 – 107; and 114.

22. The plaintiff was arrested for Driving While Intoxicated by Officers Parete and Krolikowski. Bennett Dec. ¶ 19; Discipline File #20050365 Bates No. 1254; and Gilbert Dep. pg. 107 – 108, and 124; see also Complaint ¶ 23.

23. Upon arriving at the BPD headquarters, the plaintiff refused to submit to a chemical test to measure the amount of alcohol in his blood. Discipline File #20050365 Bates No. 1256; and Gilbert Dep. pg. 109 - 111.

24. The plaintiff was then taken to the Erie County Holding Center. Gilbert Dep. pg. 109 - 112.

25. While at the Holding Center, the plaintiff spoke to Captain Nigrelli of the NYSP. Gilbert Dep. pg. 112 – 114; and Discipline File #20050365 Bates No. 1245.

26. In a report prepared for the NYSP by Captain Nigrelli, the Captain recorded the following observations:

> "Trooper Gilbert stated without inquiry, 'I have a problem'. He repeated this statement approximately three to four times. Trooper Gilbert was approached to within a distance of approximately 2 feet. The following observations were made: he had bloodshot eyes, mumbled speech, swayed while standing, and his breath had a strong odor of an alcoholic beverage. Further, on Trooper Gilbert's blue shirt was a light colored stain that was smeared in the upper chest area."

Discipline File #20050365 Bates No. 1245.

27. While the plaintiff does not recall making the statement "I have a problem", he does not deny it. Gilbert Dep. pg. 114.

28.  After being arraigned in Buffalo City Court, the plaintiff entered an alcohol rehabilitation program at the Tully Hill Treatment Facility. Gilbert Dep. pg. 115 - 118.  This was arranged by Bernard "Bernie" J. Feldmann, Jr. of the NYSP Employee Assistance Program ("EAP"). Gilbert Dep. pg. 115 – 116; and pages 12 – 13 of the deposition of Bernard J. Feldmann, Jr., attached to the declaration of George Michael Zimmermann as Exhibit "F".

29.  Inv. Feldmann has testified that the plaintiff appeared intoxicated on the morning of his arrest. Feldmann Dep. pg. 11.

30.  While at Tully Hill the plaintiff acknowledged that he had an alcohol problem. Gilbert Dep. pg. 119 - 120.

31.  Super. Bennett was informed of plaintiff's arrest and the decision was made to suspend the plaintiff without pay. Bennett Dec. ¶ 20.

32.  Super. Bennett discussed the plaintiff's enrollment in alcohol counseling with D.S.P. Felton. Bennett Dec. ¶ 21.  He believes that he may have indicated that he would take this fact into account when making the final decision regarding the disposition of the plaintiff's case. Bennett Dec. ¶ 22.  This was prior to his receiving the investigative report on the events of May 27, 2005. Bennett Dec. ¶ 22 and 23.

33.  After the NYSP investigation was completed, Super. Bennett was briefed on the findings by the Chief Inspector. Bennett Dec. ¶ 23.  He was informed that the investigation revealed that two BPD Officers and one Supervisor believed that the plaintiff was driving while he was intoxicated and that he had refused to take a chemical test to determine his blood alcohol. Bennett Dec. ¶ 24; see also Discipline File #20050365 Bates No. 1256 – 1257.  He was further informed that members of the NYSP who interviewed the plaintiff also believed he was intoxicated, and that he was observed to have urinated upon himself.  Bennett Dec. ¶ 24; see also

Discipline File #20050365 Bates No. 1230 – 1232; 1239 – 1240; and 1244.

34.     Inv. Feldmann was not directly involved in the negotiations between the plaintiff's Union and NYSP regarding possible disciplinary action against the plaintiff, based on the events of May 27, 2005. Feldmann Dep. pg. 28.  However, Inv. Feldmann was in contact with Keith Forte and Jack Moretti, the plaintiff's union representatives. Feldmann Dep. pg. 19 - 20.  He also was in contact with D.S.P. Felton. Feldmann Dep. pg. 20.

35.     Inv. Feldmann recalls that in his conversations with D.S.P. Felton, he was told that the plaintiff would "probably" not be terminated, but would "take the hardest hit a trooper ever took and still be able to save his job". Feldmann Dep. pg. 21.  He did not report this conversation to the plaintiff prior to disciplinary action being taken by the NYSP. Feldmann Dep. pg. 24.

36.     Inv. Feldmann was later informed by D.S.P. Felton that the plaintiff was to be terminated. Feldmann Dep. pg. 24 - 25.

37.     The plaintiff maintains that Inv. Feldmann told him that if he enrolled in the alcohol rehabilitation program at Tully Hill, he would be able to keep his job. Gilbert Dep. pg. 121.  He has further stated that he believed that Inv. Feldmann was speaking for the NYSP in making such an assurance. Gilbert Dep. pg. 121 – 123; see also Complaint ¶ 26.

38.     F.D.S. Felton did not have the authority to determine whether the plaintiff would be terminated or not. Bennett Dec. ¶¶ 10; and 26 – 27.  Super. Bennett strongly believed that a NYSP member who had been returned to probationary status for disciplinary reasons was not deserving of a further chance if he violated probation. Bennett Dec. ¶¶ 14, 25, 28, 29, 31, and 34.

39.     By letter dated June 10, 2005, the plaintiff was notified by Super. Bennett that his employment with the NYSP was terminated. Bennett Dec. ¶ 33; and Discipline File #20050365 Bates No. 1217.

40.     While Super. Bennett was Superintendent of the NYSP, he believes that he terminated every member that was found to have violated the terms of their probation, after having been returned to probationary status, unless that member resigned or retired before he could be terminated, which the Superintendent could not prevent. Bennett Dec. ¶ 28.

41.     The plaintiff maintains that there were other non-black members of the NYSP, who were accused of charges similar to the ones for which he was terminated, who were not terminated. Gilbert Dep. pg. 128 – 129; Complaint ¶¶ 32 – 33. However, the plaintiff does not assert that these other Officers were already on probation for similar behavior, as was the case with his termination. Gilbert Dep. pg. 129.

42.     In his Response to Interrogatories, the plaintiff names four individuals alleged to be current or former white members of the NYSP and asserts that they were treated differently than he, in that they were not terminated for their misconduct. Plaintiff's Response to Request for Interrogatories Response No. 8, pages 9 – 10.  None of these members are alleged to have committed misconduct while on probation. *Id.*

43.     Also in his Response to Interrogatories, the plaintiff names seven individuals alleged to be current or former white members of the NYSP and asserts that they were treated differently than he, following their arrests for Driving While Intoxicated. Plaintiff's Response to Request for Interrogatories Response No. 16, page 14, and Exhibit "10" (¶ 4) attached thereto.   Again, none of these members are alleged to have committed this misconduct while on probation, for previous misconduct. *Id.*

44.     According to the plaintiff, the Driving While Intoxicated charges were dismissed after trial. Gilbert Dep. pg. 125; see also Complaint ¶ 25.

45.     The plaintiff unsuccessfully challenged his termination in the State of New York Supreme Court. Gilbert Dep. pg. 139; see also Gilbert vs Bennett, Index No. 5736-05.

46.     That Court ruled that the plaintiff was not entitled to a disciplinary hearing prior to his termination due to the fact that he was a probationary employee. Gilbert vs Bennett, Index No. 5736-05.

Dated:  Buffalo, New York
        December 11, 2009

                                          ANDREW M. CUOMO
                                          Attorney General of the State of New York
                                          Attorney for Defendants
                                          BY:

                                          /s/ *George Michael Zimmermann*
                                          GEORGE MICHAEL ZIMMERMANN
                                          Assistant Attorney General, of Counsel
                                          Main Place Tower, Suite 300A
                                          350 Main Street
                                          Buffalo, New York 14202
                                          (716) 853-8444
                                          George.Zimmerman@oag.state.ny.us