UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DUDLEY P. GILBERT,

                Plaintiff,

v.

NEW YORK STATE POLICE and WAYNE E.
BENNETT, INDIVIDUALLY AND AS PAST
SUPERINTENDENT OF THE NEW YORK
STATE POLICE,

                Defendants.

**DECISION AND ORDER**
07-CV-743S

## I. INTRODUCTION

Plaintiff Dudley P. Gilbert commenced this employment discrimination action by filing a Complaint in the District Court for the Western District of New York. (Docket No. 1.) Therein, he alleges that Defendants the New York State Police ("NYSP") and former Superintendent of the New York State Police Wayne E. Bennett discriminated against him based on his race (African American). Plaintiff brings this action pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (hereinafter, "Title VII"), and New York Executive Law § 292 and § 296.

Presently before this Court is Defendants' Motion for Summary Judgment seeking dismissal of the Complaint in its entirety.[1] (Docket No. 19.) Plaintiff opposes the motion.[2]

---

[1] In support of their Motion for Summary Judgment, Defendants filed the Declaration of Wayne E. Bennett; a Statement of Undisputed Facts; the Declaration of George Michael Zimmermann; a Memorandum of Law; a Corrected Memorandum of Law; a Reply Memorandum; the Declaration of Lois Garland; and a Reply Declaration by George Michael Zimmermann. (Docket Nos. 20, 21, 22, 23, 24, 32, 33, 34.)

[2] In opposition to Defendants' motion, Plaintiff filed a Memorandum of Law and a Rule 56 Statement and Response to Defendants' Statement, with attached Exhibits. (Docket Nos. 28, 29.)

1

For the reasons stated below, Defendant's motion is granted.

## II.  BACKGROUND

**A.     Facts**

Dudley P. Gilbert, Plaintiff, is an African American resident of the City of Buffalo, Erie County, New York.  (Complaint, ("Comp."), Docket No. 1, ¶ 7.)  Defendant NYSP is a division of the executive department of the State of New York.  (Id. ¶ 9.)  Defendant Wayne E. Bennett was, at all relevant times, the Superintendent of NYSP.  (Id. ¶ 10.)

Plaintiff was hired by NYSP on March 30, 1987 as a New York State trooper. Plaintiff was employed by NYSP in that capacity for eighteen years.  (Id. ¶ 8.)  On November 9, 2004, Plaintiff was involved in a motor vehicle accident.  (Defendants' Statement of Undisputed Facts in Support of Summary Judgment ("Defs.' Statement"), Docket No. 21, ¶ 11.)  A police investigation concluded that Plaintiff had driven while intoxicated at the time of the accident.  (Declaration by George Michael Zimmermann ("Zimmermann Decl."), Docket No. 22, Ex. B.)  No charges were filed regarding this incident, but Gilbert was issued a letter of censure, suspended without pay for fifteen days, and put on probationary status from February 1, 2005 to August 1, 2005.  (Defs.' Statement ¶ 13; Plaintiff's Local Rule 56.1(b) Statement and Response to Defendants' Local Rule 56.1 Statement ("Pl.'s Statement"), Docket No. 28, ¶ 12.)  Plaintiff opted not to challenge these disciplinary actions or request a hearing, despite being offered the opportunity.  (Defs.' Statement ¶ 14.)

Subsequently, on May 27, 2005, Plaintiff became involved in another motor vehicle

accident. (Id. ¶ 17.) An officer at the scene described Plaintiff as smelling of alcohol, slurring his speech, and appearing unsteady on his feet. (Id. ¶ 20.) Plaintiff had been drinking and spilled beer on himself after being "physically overcome in the bar," allegedly as a result of his recent diagnosis with Type 2 Diabetes. (Pl.'s Statement ¶ 21.) Plaintiff was arrested and taken to the Erie County Holding Center, where he chose not to submit to a chemical test to measure the amount of alcohol in his blood, but was otherwise cooperative. (Id. ¶¶ 22-23.)

Following this incident, Gilbert entered an alcohol rehabilitation program at the Tully Hill Treatment Facility, after being advised by New York State police investigator Bernard Feldman, that checking himself into an alcohol recovery program would help protect his job. (Defs.' Statement ¶ 28; Comp. ¶ 26.) Upon being informed of Plaintiff's arrest during the May 27, 2005 incident, Superintendent Bennett made the decision to suspend Plaintiff without pay. (Defs.' Statement ¶ 31.) Bennett conferred with Chief Inspector Joseph Loszynski and was informed that several police officers believed Gilbert had been driving while intoxicated. (Id. ¶ 33; Pl.'s Statement ¶ 33.) Finally, on June 10, 2005, Bennett notified Plaintiff by letter that his employment with the NYSP was terminated. (Defs.' Statement ¶ 39.) In contrast to previous disciplinary incidents involving other troopers, Bennett did not wait for Gilbert to complete his in-patient treatment program, did not impose the lesser disciplinary sentence recommended by the First Deputy Superintendent, did not review a statement by Gilbert, and completed the investigation in approximately two weeks, as opposed to the usual two to four months. (Pl.'s Statement ¶¶ L, M, N, Q.) Plaintiff alleges that in numerous cases, white officers guilty of similar offenses received less severe punishments. (Id. ¶ G.)

Following these events, Plaintiff was acquitted of all charges relating to the May 27, 2005 incident in Buffalo City Court. (Defs.' Statement ¶ 44.)

**B.     Procedural History**

On October 14, 2005 Plaintiff jointly filed a verified complaint with the New York State Division of Human Rights and the United States Equal Employment Opportunity Commission charging NYSP, and other parties, with unlawfully discriminating on the basis of race in violation of New York State's Human Rights Law. (Comp. ¶ 34; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n"), Docket No, 29, 1.) The New York State Division of Human Rights initially concluded that there was probable cause to believe Defendants had engaged in unlawful discriminatory practices. (Pl.'s Statement ¶ E.) The proceeding was subsequently dismissed on jurisdictional grounds. (Comp. ¶ 37.) As a result of this dismissal, the Equal Employment Opportunity Commission also dismissed Plaintiff's charges. (Id. ¶ 38.)

Plaintiff filed a Complaint in the Western District of New York on November 5, 2007. (Docket No. 1.) Defendant NYSP filed an Answer thereto on January 28, 2008. (Docket No. 2.) Defendant Bennett filed an Answer on March 3, 2008. (Docket No. 7.) Defendants then filed the instant Motion for Summary Judgment on December 11, 2009. (Docket No. 19.)

### III.  DISCUSSION AND ANALYSIS

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted

where "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed.2d 142 (1970). Summary judgment is proper "only when reasonable minds could not differ as to the import of evidence." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). Nonetheless, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, the Second

Circuit has noted that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Id.

## B. Plaintiff's Discrimination Claim

Plaintiff's Complaint lists three causes of action pursuant to 42 U.S.C. § 1981, Title VII, and New York Executive Law § 292 and § 296. Because each of these claims requires Plaintiff to prove various overlapping elements, the Court will analyze Plaintiff's claims collectively by considering Plaintiff's allegations in the context of Title VII. See Chapman v. City of New York, No. 06-CV-3153 (ENV)(JMA), 2011 WL 1240001, at *12 (E.D.N.Y. Mar. 30, 2011) (dismissing § 1981 and § 1983 claims where plaintiff's Title VII claim found meritless); Lawson v. New York City Bd. Of Educ., No. 05 Civ. 825(JSR)(HBP), 2011 WL 869282, at *16 (S.D.N.Y. Feb. 25, 2011) (jointly considering claims alleging wrongful termination in violation of Title VII, § 1981 and § 1983, and New York Executive Law); Johns v. Homes Depot U.S.A., Inc., No. 03CIV4522DC, 2005 WL 545210, at *4 (S.D.N.Y. Mar. 8, 2005) (applying same standards to Title VII and § 1981).[3]

---

[3]Although Plaintiff's claims will be addressed together, it should be noted that, where a claim is brought against a state actor, § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," is the exclusive federal damages remedy for violations of rights guaranteed under § 1981. Wagner v. Connecticut Dept. of Corr., 599 F. Supp. 229, 237 (D. Conn. 2009) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989). Plaintiff has not alleged a cause of action pursuant to § 1983 and it is undisputed that NYSP is a state actor. Because Bennett was acting under color of state law in his capacity as superintendent, he would also be deemed a state actor for purposes of § 1981, and claims against him in his individual capacity would also need to be brought under § 1983. Garcia v. City of Hartford Police Dept., No. 3:95CV00279(AWT), 2011 WL 4460321, at *9 n.2 (D. Conn. Sep. 27, 2011). Although there is some dispute as to whether the holding in Jett remains good law in light of Congress's addition of subsection (c) to § 1981, the weight of authority, and the absence of controlling Second Circuit authority, favor following the Supreme Court's decision in Jett. See Brown v. N.Y. State Dept. of Corr. Servs., 583 F. Supp. 2d 404, 410 n.1 (W.D.N.Y. 2008) (quoting Bond v. City of Middletown, 389 F. Supp. 2d 319, 328 (D. Conn. 2005)). Consequently, regardless of Plaintiff's ability to establish a *prima facie* case of discrimination, his claims under § 1981 would be dismissed.

6

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1); Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 2150, 156 L. Ed. 2d 84 (2003). Where a plaintiff does not come forward with direct evidence of discrimination, the Court shall apply the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Texas Dep't of Comt'y Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

The burden-shifting test first requires that the plaintiff establish a *prima facie* case of discrimination. If the plaintiff meets this initial burden, a rebuttable presumption of discrimination arises, and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. Burdine, 450 U.S. at 254. If the defendant succeeds in making this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993)). Assuming that the defendant meets its burden at the second stage, the burden returns to the plaintiff to prove that the defendant's discrimination was intentional.

Concerning the first step, for a Plaintiff to state a *prima facie* case of discrimination he must show that (1) he is a member of a protected class, (2) he is qualified for his position, (3) he suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination. Weinstock, 224 F.3d at 42 (citing

7

McDonnell Douglas, 411 U.S. at 802).  Defendants concede, for purposes of their motion, that Plaintiff is a member of a protected class and that he did suffer an adverse employment action.  (Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem."), Docket No. 24, 8.)  Defendants challenge that Plaintiff was qualified for his position in light of the incidents on November 9, 2004 and May 27, 2005.  Defendants also challenge that Plaintiff has presented facts sufficient to create an inference of discrimination.  Plaintiff responds that he was never charged in the November 9 incident and that the May 27 incident was a result of his Diabetes.  Plaintiff also responds that the NYSP's conclusions regarding the May 27 incident are based on unfounded facts.  Finally, Plaintiff identifies four white troopers who were of comparable seniority and charged with similar misconduct, but who received dissimilar punishment.  The Court will separately consider each of the two disputed elements of Plaintiff's *prima facie* case.[4]

### 1. Qualified for the Position

To satisfy the second McDonnell Douglas element, Plaintiff need only demonstrate that he "possesses the basic skills necessary for performance of [the] job."  Powell v. Syracuse Univ., 580 F.2d 1150, 1155 (2d Cir.), cert. denied, 439 U.S. 984, 99 S. Ct. 578, 58 L. Ed.2d 656 (1978).  The "qualification" requirement of the McDonnell Douglas test "refers to the criteria the employer has specified for the position."  Thornley v. Penton Publishing, Inc., 104 F.2d 26, 29 (2nd Cir. 1997); see Owens v. New York City Hous. Auth.,

---

[4]Plaintiff does not respond to Defendants' argument that Title VII is only applicable against employer entities, and not individual defendants.  In the absence of contrary argument, and in light of controlling case law, Plaintiff's Title VII claims against Superintendent Bennett will be dismissed. Sassaman v. Gamache, 566 F.3d 307, 315-16 (2d Cir. 2009).

934 F.3d 405, 409 (2nd Cir. 1991) ("misconduct" does not necessarily establish "unsatisfactory performance," as an employee can commit some misconduct and still, in the aggregate, perform satisfactorily). A plaintiff "need only show a 'basic eligibility' for the position, and not the greater showing that [his] performance is satisfactory to the employer." Walker v. New York City Dep't of Corr., No. 01 Civ. 1116, 2008 WL 4974425, at * 13 (S.D.N.Y. Nov. 19, 2008) (citing Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2nd Cir. 2001)).

Defendants argue that Plaintiff's termination was proper because he was involved in two motor vehicle incidents and was, on both occasions, intoxicated. Moreover, the second incident occurred while Plaintiff was on probation. (Defs.' Mem. 8.) However, Plaintiff was employed by NYSP for eighteen years. Although he was subject to a variety of disciplinary actions throughout his 18 years, Defendants do not cite these as reasons for why Plaintiff was not qualified for his job, instead focusing on the two aforementioned incidents. (Declaration of George Michael Zimmermann, Docket No. 22, Ex. A.) In regards to these incidents, Plaintiff has sufficiently contested Defendants' version of events to create a genuine issue of fact as to what exactly occurred and why. It is disputed, for example, whether Plaintiff was actually intoxicated, and whether Plaintiff acted in a disorderly manner at the scene of the accident or following his arrest. (See id. ¶¶ 21, 26.) Consequently, drawing all reasonable inferences in favor of Plaintiff as the non-moving party, the Court finds that Plaintiff has provided sufficient evidence to show that he was qualified to be a New York State trooper. Thus, Plaintiff has satisfied the second element of his *prima facie* case.

### 2. Inference of Discrimination

Although Plaintiff has demonstrated that he was qualified for his position, Plaintiff fails to show that the circumstances of the alleged adverse employment action give rise to an inference of discrimination. The only evidence Plaintiff has offered to indicate that Defendants' actions were motivated by race was that four similarly situated white troopers were not terminated for similar conduct, and that Plaintiff's disciplining following the May 27, 2005 incident diverged from customary practice. Neither suffices to create an inference of discrimination.

Evidence showing that the plaintiff was treated "less favorably than other similarly situated employees outside [the] protected group" is one method of raising an inference of discrimination. Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003). When employing this method, the other employees to whom a plaintiff compares himself must be "similarly situated" in all material respects and must have engaged in comparable conduct for which they were treated differently. Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997) (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)). The facts and circumstances of the similarly situated individual need not be identical, but only bear a "reasonably close resemblance" to those of the plaintiff. Graham v. Long Island R.R., 230 F.3d 34, 40 (2nd Cir. 2000).

Plaintiff identified four white police officers who were all allegedly guilty of various offenses for which they were subjected to a variety of disciplinary measures short of termination. Master Sergeant Joseph Cyran was suspended without pay during investigation into charges of third degree burglary and grand larceny. Trooper James J. Anderson received a disciplinary transfer to the Buffalo State Police for six months due to

his problems with alcoholism. Lieutenant Patrick McDonnell was suspended for 90 days after reporting for duty intoxicated. Finally, Trooper Kathleen Pawloski was restricted from possessing a firearm off duty after a domestic incident involving an estranged husband for which she was arrested.[5]

Even assuming Plaintiff's descriptions were accurate, none of these individuals are alleged to have committed repeat violations of their original offenses after being placed on probation. Moreover, Defendants' submissions reveal that Plaintiff's characterization of these individuals is inaccurate. (Declaration of Lois Garland ("Garland Decl."), Docket No. 33.) Sergeant Cyran actually retired before disciplinary action could be taken. (Id. ¶ 23.) Trooper Anderson was not subjected to a disciplinary proceeding for alcohol-related conduct, but for failing to patrol his assigned area. (Id. ¶ 24.) Similarly, Trooper Pawloski was not disciplined for alcohol-related conduct, and completed her five day suspension without incident. The only one whose circumstances were remotely similar to Gilbert's was Lieutenant McDonnell who was disciplined for driving while intoxicated, and placed on probation. (Id. ¶ 25.) Later, he was investigated for disobeying an order to stay away from certain individuals, being involved in harassing behavior, and improperly accessing a police database, as a result of which he was suspended for thirty days without pay, demoted,

---

[5]Apparently, in his Complaint before the New York State Division of Human Rights, Plaintiff alleged that there were seven white New York State troopers who were treated differently for the same or similar misconduct. (Garland Decl. ¶ 4.) None of these individuals are specifically referred to in Plaintiff's Statement of Facts or Plaintiff's other pleadings. (See Pl.'s Statement ¶ G; Pl.'s Opp'n 13.) Nevertheless, even if Plaintiff were relying on these individuals to create an inference of discrimination, Plaintiff would not meet the fourth McDonnell Douglas requirement. Out of the seven individuals identified, two retired before disciplinary proceedings could take place, and another had no listed disciplinary violations at all. In each case involving alcohol, it was that trooper's first alcohol-related incident, and in none of the cases did a trooper commit a repeat offense while on probation. (See Garland Decl. ¶¶ 17-20.) Because none of the individuals shared the specific circumstances of Plaintiff's case, none of them can assist Plaintiff in showing that he was singled out on the basis of race.

11

transferred, and again put on probation for six months. (Id. ¶ 26.) Like Plaintiff, McDonnell violated his initial probationary period. But, unlike Plaintiff, McDonnell's later conduct was not alcohol-related, or otherwise similar to the conduct for which he was first placed on probation.

Although Plaintiff was disciplined more harshly than these other troopers, because Plaintiff has not demonstrated that he was similarly situated to them, he has failed to raise an inference of discrimination and has not made out the final element of his *prima facie* case.

Plaintiff also claims an inference may be made on the basis that he was treated differently. Plaintiff alleges numerous ways in which Superintendent Bennett's decision to terminate Plaintiff differed from the manner in which he proceeded towards other police officers. (Pl.'s Opp'n 13-15.) Superintendent Bennett did not wait until after Gilbert's case had been resolved in Buffalo City Court before terminating him. Bennett did not consider Gilbert's participation in an employee assistance program, nor wait until Gilbert had completed his treatment. Bennett did not follow the First Deputy Superintendent's recommendation of a less severe punishment. Bennett also did not review a statement by Gilbert before making his decision. Finally, the investigation resulting in Gilbert's termination was concluded much more quickly than other, prior, investigations into Gilbert's conduct.

Even assuming all this as true, there is nothing in any of these allegations that creates an inference of race-based discrimination. Plaintiff's conclusory allegations that Superintendent Bennett's cursory investigation and more severe sentence was the result

of race are unsupported by other evidence. As a result, it is, for example, just as likely that Bennett's decision was expedited not by Gilbert's race, but by the fact that Gilbert was, at the time of his offense, already on probation. Aside from those individuals already discussed, Plaintiff has also not specified in the investigations of what persons Bennett did consider factors such as an ongoing court proceeding or participation in a rehabilitation program. Left with nothing more than Plaintiff's own speculation as to Superintendent Bennett's motivations, and again noting that Plaintiff has failed to identify similarly situated individuals who were treated differently, this Court finds that Plaintiff has not met his burden of establishing an inference of discrimination. See Pergament v. Fed. Express Corp., 03-CV-1106, 2007 WL 1016993, at *9 (E.D.N.Y. Mar. 30, 2007) (finding fourth element not met where plaintiff relied on speculation regarding the "true" reasons for her termination).[6] Consequently, Defendants' Motion for Summary Judgment will be granted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No.19) is GRANTED.

---

[6]Plaintiff appears to also argue that the punishment he received for the first incident on November 9, 2004 should be considered as evidence of Defendants' race-based discriminatory conduct. However, Plaintiff failed to challenge the original imposition of probation. Plaintiff did not request a hearing and does not appear to have challenged that punishment in his administrative proceeding. Having previously accepted the investigation's finding, Plaintiff cannot now claim that it was motivated by race.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:  October 18, 2011
        Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            Chief Judge
                                            United States District Court